IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **AMY JOHNSON AND NICOLE LE DE,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action Number |
| **vs.** ) | **03-C-3338-NE** |
| ) | |
| **VINTAGE PHARMACEUTICALS, INC.,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiffs Amy Johnson ("Johnson") and Nicole Le De ("Le De") initiated the present action against their employer, Vintage Pharmaceuticals, Inc. ("Vintage"). Johnson alleges violations of the Family Medical Leave Act ("FMLA"), as well as Alabama law claims of assault and battery, invasion of privacy and negligent supervision and retention. Le De alleges retaliatory discharge in violation of 42 U.S.C. §§ 1981 and 2000e et seq., and Alabama law claims of assault and battery, invasion of privacy and negligent supervision and retention.

This matter is before the Court on Defendant Vintage's Motion for Partial Summary Judgment. (Doc. 16.) Based on the undisputed facts, the Court finds that Vintage's Motion for Partial Summary Judgment is due to be GRANTED in part and DENIED in part. Vintage's Motion For Summary Judgment is due to be granted on

Johnson's and Le De's state law claims of assault and battery, invasion of privacy and negligent supervision and retention. Vintage's Motion For Summary Judgment is due to be denied on Johnson's FMLA claim.[1]

## I.  FACTS

A.   **Amy Johnson**

1.   **Family Medical Leave Act**

On December 23, 2002, Clinic physician Dr. Belmont completed a Family Medical Leave Act Request Form that excused Johnson from work from December 23, 2002, through February 4, 2003. (Def. Ex. 1 at Ex. B; Def. Ex. 60.) The FMLA Request Form also stated that Johnson could return to work February 5, 2003. (*Id*.)

On February 4, 2003, Johnson spoke with Vintage's Human Resources Director, Judy Upton. (Def. Ex. 4, Johnson Depo. at 70.)  In that conversation, Upton told Johnson that she needed further authorization to continue FMLA leave. (*Id*.)

On February 5, 2003, Johnson did not return to work. (Def. Ex. 2, Upton Aff.)  On February 6, 2003, Johnson received a letter from Upton stating that Johnson needed to return the FMLA forms by February 10, 2003, in order to be classified as being on FMLA leave, and that Johnson's FMLA certification covered her absences only until February 4, 2003. (Def. Ex. 23.)  Additionally, the letter stated that if Johnson failed to "get this form back by Monday, February 10, 2003 before 12:00 noon, then you cannot be classified as

---

[1] Defendant Vintage did not address Le De's claim of retaliatory discharge, pursuant to 42 U.S.C. §§ 1981 and 2000e et seq., in their Motion For Partial Summary Judgment.

being on FMLA and your employment will be terminated."(*Id*.)

On February 5, 2003, Johnson was seen by Dr. Louis Horn at The Orthopaedic Center. (Def. Ex. 23.) Dr. Horn provided Johnson with a medical excuse that stated that Johnson was disabled due to a lumbosacral strain, from February 4, 2003 through the term of her pregnancy. (*Id*.) Vintage had received Johnson's medical excuse from Dr. Horn before issuing Johnson's termination letter because Johnson's termination letter referenced Dr. Horn's note. (*Id*.)

On February 10, 2003, Johnson was terminated for failing to timely provide FMLA documentation and doctor's excuses for her absences. (Def. Ex. 23, Letter to Johnson of 02/10/03.)

    2.    **Alabama law claims of assault and battery, invasion of privacy and negligent supervision and retention**.

Johnson testified that she was subjected to unwanted conduct by her co-employees. On one occasion, Johnson stated that she was talking with her supervisor, Nick West ("West"), in his office, three employees walked by West's office, turned off the lights and starting laughing. (Def. Ex. 4, Johnson Depo. at 17.) The same three co-employees walked back to West's office, apologized for their conduct and started making slurping noises. West told the employees to "quit playing" and instructed them to leave. (*Id*.) Johnson also testified that the same co-employees made slurping noises over the intercom and two-way radio. West again told the employees to "quit playing." (*Id*.)

Johnson stated that she later cried about the incident. (Def. Ex. 4, Johnson Depo. at 17.) West inquired as to why Johnson was crying. Johnson told West that Johnson's

co-employees were making oral sex noises and that she was offended. West replied that he would handle it and Johnson testified that the incident never happened again. (*Id*. at p. 24.)

Johnson testified that Brandon Johnson ("Brandon") called Johnson a "whore" and a "stupid lesbian." (Def. Ex. 4, Johnson Depo. at 22.) Johnson reported the "whore" comment to West. West again replied that he would handle the situation and Brandon never called Johnson a whore again. (*Id*. at 25.) Johnson never reported Brandon calling her a "stupid lesbian." (*Id*. at 26.)

Johnson also felt that she was subjected to unwanted conduct when Scott Pace ("Pace") "bumped and rubbed into the back of her" on several occasions when Johnson and Pace were working on the line. (Def. Ex. 4, Johnson Depo. at 27.) Although Pace apologized, Johnson stated that she felt that Pace's actions were intentional. Johnson did not report Pace's behavior because Pace was Supervisor West's brother-in-law. (*Id*. at 29.) Johnson also did not report Pace's behavior to his supervisor, John Schultz. (*Id*. at 31.)

Johnson was familiar with Vintage's policy against harassment. She had attended a meeting where Vintage's President informed employees that reports of harassment may be made directly to him. (Def. Ex. 4, Johnson Depo. at 30.) Johnson was also familiar with the employee handbook, which stated that violations of the policy against harassment should be reported in writing to senior management. (*Id*. at 130.) Johnson never made any complaints in writing. (*Id*.)

**B.     Nicole Le De's Alabama law claims of assault and battery, invasion of privacy and negligent supervision and retention.**

Le De testified that her co-workers made her feel uncomfortable on several occasions. Le De stated that her co-worker, Scott Pace ("Pace"), looked at her breasts and said, "Boy, they're big." (Def. Ex. 3, Le De Depo at 19.) When Le De asked Pace what he was referring to, Pace did not respond. Le De also asserted that Pace would make a machine bump into her breast while they were working together. (*Id*. at 16.)

Le De also felt uncomfortable when she was invited to Pace's home for a barbeque, although Pace's wife was expected to be present. (*Id*. at 20-22.) Le De did not tell her supervisors or Pace that Pace's invitation made Le De feel uncomfortable. (*Id*. at 25.)

Le De also testified that on several occasions, Pace licked his finger, rubbed his finger around his nipple and then put his finger in his mouth while working. (Def. Ex. 3, Le De Depo. at 16.) After this scenario occurred three times, Le De informed Pace that his conduct was not appropriate. (*Id*. at 27.) Le De told only a few co-workers about Pace licking his finger. Le De never reported Pace's behavior to any Vintage supervisors.

Le De was aware of Vintage's policy that harassment should be reported to senior management in writing. (*Id*. at 170-72.) Le De stated that she feared she would be terminated if she reported Pace's behavior. (*Id*. at 166-67.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant demonstrates that there is no

5

genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law.  *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c).  The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits', if any, which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)).  When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the non-moving party.[2]  *See, e.g., Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997).  The Eleventh Circuit has held that evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact.  *See, e.g., Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

---

[2] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' . . . and draw 'all justifiable inferences . . . in his favor . . . . " *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991).  "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party."  *See Hayden v. First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

### III.  ANALYSIS

**A.  Johnson's FMLA Claim**

The regulations under FMLA authorize an employer to require medical certification from an employee requesting FMLA leave.  29 C.F.R. § 825.305(a).  An employer requiring medical certification must provide the employee written notice of the need for medical certification.  (*Id.*)  The employer must also inform the employee in clear, expressed written terms of the consequences of failing to provide certification. 29 C.F.R. § 825.301(b) and 305(d).

Under FMLA, a certification is sufficient if it states the date the serious health condition commenced, the probable duration of the health condition, appropriate medical facts regarding the condition, and a statement that the employee cannot perform the functions of his or her position.  29 U.S.C. § 2613(a)-(b).  Additionally, the federal regulation interpreting the certification provisions of the Act state that the employer "shall" provide the employee a reasonable opportunity to cure any deficiencies in the certification.  29 C.F.R. § 825.305(d).

Vintage contends that it did not receive Johnson's FMLA medical documentation beyond the FMLA leave that ended February 4, 2003.  (*See* Def. Ex. 2, Aff. of Judy Upton).  However,  Vintage did receive medical documentation from Dr. Horn at the Orthopaedic Center, before issuing Johnson's termination letter.  In fact, Johnson's termination letter referenced Dr. Horn's note.  This medical documentation from Dr. Horn

stated that Johnson was disabled from February 4, 2003 through the end of her pregnancy, due to a lumbosacral strain. (Def. Ex. 23; *see also* Johnson Termination Letter of 04/10/03.) Dr. Horn's medical documentation regarding Johnson's condition was therefore minimally sufficient under FMLA. Even assuming that Dr. Horn's medical documentation was not sufficient, the federal regulations provide that Johnson should have been given a reasonable opportunity to cure the deficiency. Johnson's termination was premature because Dr. Horn's medical documentation regarding Johnson's condition provided Johnson protection under FMLA. Therefore, summary judgment on Johnson's FMLA claim should be denied.

> B.  **Johnson and Le De's State Law Claims.**

>> 1.  **Assault and Battery**

An assault consist of an intentional, unlawful touching done in a rude or angry manner, producing a well founded fear of an imminent battery. *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990). A successful assault becomes a battery. *Surrency v. Harbison*, 489 In order to hold the employer liable for an assault and battery of a employee, the Plaintiff must show that the employer ratified the employee's behavior by adopting or implicitly approving the behavior. *Mills v. Wex-Tex Indus., Inc.*, 991 F. Supp. 1370, 1383 (M.D. Ala. 1997).

>>> a.  **Amy Johnson**

The undisputed facts clearly demonstrate that Johnson did not produce any

evidence to support an claim of assault and battery, or that Vintage ratified the misconduct of its employees. Johnson never testified that the conduct of her co-workers was done in a rude or angry manner or that Johnson felt threatened. Therefore, Johnson has no evidence of the underlying tort of assault and battery.

Even if Johnson had produced evidence supporting an assault and battery, Johnson failed to produce any evidence that Vintage ratified its employee Pace's alleged behavior. There was no evidence that Vintage was aware of the Pace's behavior; or that Vintage did not take steps to prevent it. In fact, Johnson testified that when she reported the improper conduct of Pace to West, the supervisor, West stated that he would handle it and the complained of conduct never happened again. (Def. Ex. 4, Johnson Depo. at 24, 25.) Therefore, summary judgment on Johnson's claim of assault and battery is due to be GRANTED.

### b. Nicole Le De

Le De also cannot meet the elements to prove an assault and battery. Le De testified that Pace made a machine bump into Le De's breasts while working together. (Def. Ex. 3, Le De Depo at 16.) (Def. Ex. 3, Le De Depo at 26-27.) However, Le De also did not present any evidence that Pace's behavior was done in a rude or angry manner or that Le De felt threatened.

Further, there was no evidence tending to show that Vintage ratified Pace's behavior. In fact, Le De never reported Pace's behavior to any of Vintage's supervisors.

9

Therefore, as a matter of law, summary judgment on Le De's assault and battery claim is due to be GRANTED.

### 2. Invasion of Privacy

Invasion of privacy is the "wrongful intrusion" into an individual's private affairs so that it causes shame and humiliation. *McIsaac v. WZEW-FM, Corp.*, 495 So. 2d 649, 651 (Ala. 1986). In addition to proving the underlying tort of invasion of privacy, the Plaintiff must also show that the employer ratified the employee's tortious conduct.

Plaintiffs Johnson and Le De did not present evidence that their Vintage co-employees inquired into or interrogated Johnson or Le De regarding their personal affairs causing shame and humiliation. Even assuming *arguendo* that the comments made by Johnson's and Le De's coworkers were an invasion of privacy, Vintage clearly did not ratify the behavior. In fact, when Johnson's supervisor found out about Johnson being called a "whore," her supervisor stated that he would handle the situation and the situation never happened again. (*Id*. at 25.) Le De never reported any comments made by her co-workers to Vintage supervisors. Therefore, summary judgment on both Johnson's and Le De's invasion of privacy claim is due to be GRANTED.

### 3. Negligent Supervision and Retention

A negligent supervision and retention claim requires the Plaintiff to show that the employer negligently; 1) gave improper orders; 2) hired incompetent individuals; 3) supervised activity; and 4) permitted or failed to prevent improper activity. *Ledbetter v.*

*United American Ins. Co.*, 624 So. 2d 1371, 1373 (Ala. 1993)(citations omitted); Restatement (Second) of Agency § 213 (1957).

Viewing the facts in a light most favorable to Plaintiffs Johnson and Le De, Vintage was not negligent in its supervision and retention of employees.  Plaintiff Johnson testified that when she reported alleged improper conduct to her supervisor, the supervisor stated that he would handle it and the complained of conduct did not happen again.  (Def. Ex. 4, Johnson Depo. at 24, 25.)  Additionally, it is undisputed that Vintage took steps to prevent improper activity because Vintage's President spoke to all employees about how to report inappropriate conduct.  (Def. Ex. 4, Johnson Depo. at 30.)  Accordingly, summary judgment on Johnson's and Le De's negligent supervision and retention claims is due to be GRANTED.

## IV.  CONCLUSION

Based on the foregoing, Defendant's Motion for Partial Summary Judgment for Johnson's FMLA claim is due to be DENIED.  Defendant's Motion for Partial Summary Judgment for Johnson's and Le De's claims of assault and battery, invasion of privacy and negligent supervision and retention are due to be GRANTED.  It shall be done by separate order.

Done this 8th day of March, 2005.

_____
U.W. Clemon
Chief United States District Judge